IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID FAUNTLEROY | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| Former Chicago Police Lt. JON BURGE, | ) |
| Former Chicago Police Detectives | ) |
| DANIEL MCWEENY and | ) |
| RAYMOND MADIGAN, and | ) |
| THE CITY OF CHICAGO, ILLINOIS | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff David Fauntleroy, by his attorney, Douglas B. Harper, brings this action and complains of Defendants as follows:

### INTRODUCTION

1.      Plaintiff David Fauntleroy seeks to recover damages for the 25.705 years he spent wrongfully imprisoned as a result of Defendants' illegal actions, and for the unconstitutional policies and procedures that allowed those illegal actions to occur.

2.      On April 26, 1983, at approximately 1:30 PM, Defendants Madigan and McWeeny arrested James Andrews as a suspect in a murder investigation. They subjected him to physical and psychological coercion ("torture") at Area Two Police Headquarters in Chicago, Illinois, until he confessed to committing the murder and implicated Mr. Fauntleroy. At approximately 11:10 PM, based on Mr. Andrews' coerced confession and implication of Mr. Fauntleroy, Defendants Madigan and McWeeny arrested Mr. Fauntleroy as a suspect in the same murder investigation. When Mr. Fauntleroy denied involvement, they subjected him to torture at Area Two Headquarters until he confessed to committing

the murder and signed a consent to search his home which (Defendants falsely claimed) resulted in a seizure of evidence belonging to the deceased. Defendant Burge coordinated and supervised the investigation of Mr. Andrews and Mr. Fauntleroy.

3.      Mr. Andrews was prosecuted in Cases 83-CR-4978 and 83-CR-4979, and Mr. Fauntleroy was prosecuted in Case 83-CR-4979. In September and October 1984, Mr. Andrews and Mr. Fauntleroy moved to suppress their confessions, and Mr. Fauntleroy also moved to suppress the evidence allegedly obtained from his home. The Court (Carey, J) denied the motions. Defendants were then aware that Defendant Burge and other detectives including Madigan and McWeeny had been accused of torturing other arrested persons, but Defendants failed to disclose that information to Mr. Fauntleroy and the Court.

4.      Later in 1984, Mr. Andrews was convicted of murder based on his coerced confession. On August 28, 1986, in a separate trial, Mr. Fauntleroy was convicted of murder and armed robbery based on his coerced statement and the evidence supposedly obtained from his home. The State's theory was that Mr. Andrews killed the deceased and Mr. Fauntleroy was guilty by accountability. The State claimed that Mr. Fauntleroy had voluntarily confessed after Defendants Madigan and McWeeny physically displayed Mr. Andrews, and his coerced confession, to Mr. Fauntleroy. As part of that evidence, Mr. Andrews' coerced confession was published to Mr. Fauntleroy's jury, even though Mr. Andrews did not testify. At the time of Mr. Fauntleroy's trial, Defendants were then aware that Defendant Burge and other detectives including Madigan and McWeeny had been accused of torturing other arrested persons, but Defendants failed to disclose that information to Mr. Fauntleroy and the Court.

5.      Over the next decade, evidence accumulated that Defendants Burge, Madigan and McWeeny, as well as other detectives in Area Two, had engaged in systematic torture of arrested persons to extract confessions from them. By March 1999, a federal judge recognized that "[i]t is now common knowledge that in the early to mid-1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions. *U.S. ex. rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999).

6.      Based on this new evidence, Mr. Andrews filed a post-conviction petition in May 2004. He argued that, if the Circuit Court had been aware in October 1984 of what is now known about the regime of torture in Area Two, the Court would have granted his motion to suppress. On October 15, 2007, the Court (Sumner, J.) vacated Mr. Andrews' murder convictions based on a finding that Mr. Andrews' "constitutional rights were violated" during the course of his interrogation and trial. In February 2008, prosecutors announced that they would not pursue re-trial of the murder charges against Mr. Andrews. On information and belief, this decision was based on a determination that, without the coerced confessions, there was no evidence to support charges against Mr. Andrews.

7.      On August 27, 2008, Mr. Fauntleroy filed a post conviction petition in the Circuit Court of Cook County based on the new evidence regarding Defendants Burge, Madigan and McWeeny, and also based on the new evidence regarding Mr. Andrews. His petition argued that, if the Court had known in October 1984 what is now known about the regime of torture in Area Two, the Court would have granted his motion to suppress the false evidence that had been wrongly coerced from him. His petition also complained that the State used false evidence against him that had been coerced from Mr. Andrews.

8.      On January 8, 2009, the Circuit Court (Sheehan, J.) granted Mr. Fauntleroy's post conviction petition, vacated his convictions for Murder and Armed Robbery, and ordered a new trial. On January 9, 2009, the Court (Sheehan, J.) entered an order which observed:

> [T]he People of the State of Illinois conceded that, after throughly investigating the facts in this case, the defendant is entitled to the post conviction relief stated in his petition. The People conceded, further, that in light of the facts in this case, and the law as it applies, defendant should prevail at an evidentiary hearing.

The order went on to grant a *nolle prosequi* of all charges against Mr. Fauntleroy and order his immediate release from prison.

9.      Mr. Fauntleroy spent 25.705 years incarcerated for a murder that he did not commit as a direct result of Defendants' illegal and unconstitutional actions.

## JURISDICTION AND VENUE

10.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 *et seq.*, and the Constitution of the United States. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because (i) one or more of the parties reside, or, resided at the time the events took place, in this judicial district; and (ii) the actions at issue took place in this judicial district.

## THE PARTIES

12.     Plaintiff DAVID FAUNTLEROY is a citizen of the United States, he is currently a resident of the State of Florida, and he was a resident of this judicial district at all times relevant to this complaint.

13.     Defendant JON BURGE, at all times relevant to this complaint, was a duly appointed and sworn Chicago Police Lieutenant and the commanding officer of Chicago Police Area Two Detective Violent Crimes Unit ("Area Two"). In 1983 and 1984, Defendant Burge was the commanding officer of Defendants Madigan and McWeeny when they engaged in the conduct complained of in this Complaint. Defendant Burge's wrongful actions took place in the course and scope of his employment. Defendant Burge engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned, and ratified brutality and torture by other detectives, including Defendants Madigan and McWeeny. Plaintiff David Fauntleroy sues Defendant Burge in his individual capacity.

14.     Defendant RAYMOND MADIGAN, at all times relevant to this complaint, was a duly appointed and sworn Chicago police officer who was assigned to Area Two and who served under Defendant Burge's command. Defendant Madigan engaged in the conduct complained of in this Complaint in the course and scope of his employment. Plaintiff David Fauntleroy sues Defendant Madigan in his individual capacity.

15.     Defendant DANIEL McWEENY, at all times relevant to this complaint, was a duly appointed and sworn Chicago police officer who was assigned to Area Two and who served under Defendant Burge's command. Defendant McWeeny engaged in the conduct complained of in this Complaint in the course and scope of his employment. Plaintiff David Fauntleroy sues Detective McWeeny in his individual capacity.

16.     Defendant THE CITY OF CHICAGO ("City") is an Illinois municipal corporation and, as such is responsible for the policies, practices, and customs of its employees, including but not limited to employees of the Chicago Police Department. The

City of Chicago is responsible for the acts of Defendants while they were employed by the City of Chicago and acting pursuant to the polices and practices of the Chicago Police Department and/or the City of Chicago.

## RELEVANT NON-PARTIES

17.     RICHARD BRZECZEK was, from 1981 to 1983, the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained herein. He was the ultimate supervisor of Defendants Burge, Madigan and McWeeny. He is not a party to the instant litigation.

18.     LEROY MARTIN was, from 1983 to 1984, the Commander of the Area Two Detective Division and was the direct supervisor of Defendants Burge, Madigan and McWeeny. He is not a party to the instant litigation.

19.     RICHARD M. DALEY was the State's Attorney of Cook County from 1981 to 1989. During that period, he was responsible for the policies, practices, and customs of the Cook County State's Attorney's Office. From 1989 to the present time, Daley has been and continues to be the Mayor of the City of Chicago and during this period was and is responsible for the policies, practices, and customs of the City, including its Police Department. He is not a party to the instant litigation.

20.     RICHARD DEVINE was the First Assistant State's Attorney of Cook County from 1981 to 1983, working as a subordinate to Daley during this time. From 1997 to present, he has been the State's Attorney of Cook County and, as such, is responsible for the policies, practices, and customs of the Cook County State's Attorneys' Office. He is not a party to the instant litigation.

21.     WILLIAM MERRITT was an Assistant State's Attorney of Cook County who took Mr. Andrews' and Mr. Fauntleroy's coerced confession. He is not a party to the instant litigation.

22.     COOK COUNTY is a governmental entity within the State of Illinois, which consists in part of the Cook County State's Attorney's Office. At various times relevant to this action, Cook County and/or the Cook County State's Attorney's Office was the employer of Daley, Devine and Merritt. Cook County is not a party to the instant litigation.

## FACTUAL ALLEGATIONS

### The Policy and Practice of Torture at Area Two.

23.     From at least the time he was placed in charge of the Violent Crimes Unit at Area Two in 1981, Defendant Burge instituted a policy and practice pursuant to which he and detectives working under his command tortured arrested persons to extract confessions.

24.     The fact that Defendant Burge had instituted a policy and practice of torture at Area Two was clearly known to Defendant The City of Chicago, including its various divisions, departments, and policymakers. In February 1982, Richard Brzeczek sent Richard M. Daley a letter (the "Brzeczek Letter") in which Brzeczek advised Daley of allegations that Chicago Police Detectives in Area Two were involved in the torture of Andrew Wilson.

25.     In the Brzeczek Letter, Brzeczek relayed to Daley that Dr. John Raba, the director of Cermak Hospital, examined Mr. Wilson after he had been in the custody of

Defendant Burge at Area Two, and determined that Mr. Wilson had been tortured. Specifically, Dr. Raba wrote:

> I examined Mr. Andrew Wilson on Feb. 15 & 16, 1982. He had multiple bruises, swellings and abrasions on his face and head. His right eye was battered and had a superficial laceration. Andrew Wilson had several linear blisters on his right thigh, right cheek and anterior chest which were consistent with radiator burns. He stated he'd been cuffed to a radiator and pushed into it. He also stated that electrical shocks had been administered to his gums, lips and genitals. All these injuries occurred prior to his arrival at the Jail. There must be a thorough investigation of this alleged brutality.

26.     During the course of a subsequent investigation, Daley admitted that he provided the Brzeczek Letter to, and discussed the Brzeczek Letter with Richard Devine. However, despite the serious issues raised by the letter, neither Daley, Devine or Brzeczek took any actions to investigate the allegations of torture of Mr. Wilson.

27.     On information and belief, Leroy Martin was aware of the accusations contained in the Brzeczek Letter. Despite the fact that he was the direct supervisor of Defendant Burge at the time, Martin took no actions to investigate the allegations of torture of Mr. Wilson.

28.     The allegations of torture raised in the Brzeczek Letter were not the only allegations of torture in Area Two that put Brzeczek, Martin, Daley and Devine on notice that Defendant Burge and his subordinates had instituted a policy and practice of torture at Area Two.

29.     Indeed, from 1981 through 1988 – the time period during which Daley was State's Attorney and Devine was the First Assistant State's Attorney – at least 55 persons (including Mr. Fauntleroy) alleged that they were tortured at Area Two.

30.    On information and belief, many of the persons who alleged that they were tortured by detectives at Area Two filed motions to suppress which outlined in formal court filings their allegations that they had been tortured. Because all Assistant State's Attorneys who defended against the motions to suppress reported directly or indirectly to Daley and Devine, Daley and Devine knew or should have know of the many instances when arrested persons claimed they had been tortured.

31.    Despite the fact that they knew or should have known about numerous instances in which arrested persons claimed they had been tortured at Area Two, neither Daley nor Devine took any actions to investigate the allegations of torture at Area Two. Furthermore, Daley and Devine affirmatively suppressed this information from Mr. Fauntleroy and the court.

### Defendants Take James Andrews into Custody and Torture Him Until He Agrees to Give False Evidence Against Himself and Mr. Fauntleroy

32.    On April 26, 1983, at approximately 1:30 PM, Mr. Andrews was brought to Area Two at 727 E. 111th Street in Chicago by two police officers. He arrived and Defendants Madigan and McWeeny questioned him about the Keith Lewis murder.

33.    On information and belief, Madigan and McWeeny handcuffed Mr. Andrews to a metal ring attached to the wall, yelled at him, called him names, physically struck him with flashlights and their fists, and told him he could not make a phone call. Madigan brought a pen and paper to Mr. Andrews, they told him they wanted him to make a confession admitting to the murder, and they told him how they wanted him to say it.  Mr. Andrews denied knowing anything about the murder and denied having been with Mr. Fauntleroy. The detectives continued yelling at Mr. Andrews, and striking him in this

manner with their fists and flashlights. This treatment went on for hours until Mr. Andrews finally agreed to adopt the statement that Defendants Madigan and McWeeny insisted he adopt, which confessed to the Keith Lewis murder and implicated Mr. Fauntleroy.  Mr. Andrews has since maintained that he made this statement only because he understood that, if he did not do so, he would continue to face abuse and torture at the hands of Defendants Madigan and McWeeny.

### Defendants Madigan and McWeeny Take Mr. Fauntleroy into Custody Based Solely on the Statement they Coerced From Mr. Andrews, and Torture Him Until He Agrees to Give False Evidence Against Himself

34.     On April 26, 1983, at approximately 11:10 PM,  Mr. Fauntleroy was arrested as a suspect in the Keith Lewis murder, based solely on the false information which Defendants Madigan and McWeeny forced Mr. Andrews to adopt. This false evidence provided the only evidence which made Mr. Fauntleroy a suspect in the murder.

35.     At some time later that night or early the next morning, Defendants McWeeny and Madigan put Mr. Fauntleroy in the back seat of a police car, with his hands handcuffed behind his back. They drove to a dark, undeveloped, wooded area on or near Doty Avenue in the approximate vicinity of 111th Street and the Bishop Ford Expressway. There were no street lights or buildings visible nearby.  There were no cars or people on the road.  It was a very dark, remote area.  The detectives stopped the police car in this dark, remote area; turned off the car headlights; and turned off the car ignition. They did not tell Mr. Fauntleroy why they were there and never told him why they had turned off the car lights and ignition. Mr. Fauntleroy was afraid they were going to pull him out of the parked car and beat him, or even shoot and kill him. They sat in the parked police car, in the dark, for

at least 20 minutes or more. The detectives began talking to each other. At one point, one of the detectives said to the other, "Look at him, that's how they look when they're guilty." At another point, one of the detectives stated, "How would you like it if I used this on him?" Immediately after saying that, Detective McWeeny held up a handgun and pointed it at Mr. Fauntleroy. At this time, Mr. Fauntleroy became so afraid that he would be killed, right then and there, that he lost control of his bladder and urinated on himself. The Defendants continued to threaten Mr. Fauntleroy in this manner, and then, at some point that evening, the Defendants started the car and drove back to Area Two.

36.     At some time later that night or early the next morning, Mr. Fauntleroy was brought into Area Two. Madigan and McWeeny brought him into a jail cell and left alone without ever being told why he was being held. Later, he was moved to another room for questioning. On entering the room, he saw empty soda cans, empty wrappers for food, and empty packs of cigarettes on a table. McWeeny and Madigan handcuffed him to a steel ring in the wall and questioned him about the murder of Keith Lewis. Mr. Fauntleroy did not know anything about this murder and told them so. At that point, Defendants alternated between questioning him, striking him with fists, and beating him with flashlights. Mr. Fauntleroy asked to call his family, to get a lawyer, and McWeeny said, "This ain't a TV show. You get a phone call when we get what we want." They said, if he told them exactly what they wanted him to say, he would only be charged with simple robbery and another man, Mr. Andrews, would be charged with murder. They said, if he did not tell them what they wanted, he (Mr. Fauntleroy) would be charged with murder and go to death row. Mr. Fauntleroy continued to tell them that he knew nothing about this murder. The questioning

and beating continued in this manner for what seemed like hours. The blows from the beating were so painful and disorienting that Mr. Fauntleroy lost track of time.

37.     Early the next morning, McWeeny and Madigan told Mr. Fauntleroy that Mr. Andrews had signed a confession which placed Mr. Fauntleroy at the scene of the murder. After saying this, the detectives brought Mr. Andrews to the doorway of the interview room, made him stand in the doorway for Mr. Fauntleroy to see, and then they took him away. At that point, Mr. Fauntleroy did not know what the Defendants had done to Mr. Andrews to make him falsely implicate Mr. Fauntleroy, but Mr. Fauntleroy knew how they had treated him, and he assumed that they had treated Mr. Andrews just as harshly or worse. Mr. Fauntleroy was afraid that, whatever they had done to Mr. Andrews, they would do the same to him, or worse, if he did not say what they wanted him to say.

38.     Soon after taking Mr. Andrews away from the doorway, McWeeny and Madigan questioned Mr. Fauntleroy again and brought a man to see him. They said the man was a lawyer, he was there for Mr. Fauntleroy, and for that reason there was no need for Mr. Fauntleroy to call his family to get his own lawyer.  They said, if Mr. Fauntleroy told the man what they had told him to say, the man would get him out of the police station. Mr. Fauntleroy did not know that the man was really Assistant State's Attorney William Merrit. It was under these circumstances that Mr. Fauntleroy finally gave the confession and consent to search that Defendants McWeeny and Madigan told him to sign.

39.     During the entire time Mr. Fauntleroy was at Area Two, he was not allowed to use the telephone to call his family to get a lawyer, he could not use the restroom, he was not given Miranda warnings, and he was not given food or water.

**Mr. Fauntleroy Moves to Suppress the False and Coerced Evidence**

40.     On June 11, 1984, Fauntleroy filed a *Motion to Suppress Evidence*, regarding the evidence allegedly seized from his home, on the grounds that he had been coerced into consenting to allow the search. He also filed a *Motion to Quash Arrest and Suppress Evidence and Statements.*

41.     On July 12, 1984, Fauntleroy filed a *Motion to Suppress Statements* on the grounds that his confession had been forcibly coerced. Mr. Andrews filed a similar motion, seeking to suppress the coerced statement he had made.

42.     The Circuit Court (Carey, J.) denied Mr. Fauntleroy's motion to quash arrest and suppress physical evidence, and set a hearing on the motion to suppress statements.

43.     On September 25, 1984 and September 26, 1984, the Circuit Court conducted a hearing on the motions to suppress statements. At the hearing, Defendants Madigan and McWeeny testified and admitted that they arrested Mr. Andrews, he gave them the information which made Mr. Fauntleroy a suspect, and Mr. Fauntleroy's confession had been voluntary.

44.     At no time during the hearing did the State (acting through Daley and Devine) either advise the Court of the allegations of torture contained in the Brzeczek Letter or advise the Court of the numerous arrested persons who had made allegations of torture at Area Two similar to those made by Mr. Fauntleroy.

45.     The Court credited the false and perjured testimony offered by Defendants Madigan and McWeeny and denied Mr. Fauntleroy's Motion to Suppress.

**Mr. Fauntleroy is Convicted Based on the False and Coerced Evidence Obtained From Him, and Also Based on Mr. Andrews' Coerced Confession**

46.     From August 26, 1986 to August 28, 1986, the Circuit Court conducted the jury trial of Mr. Fauntleroy's case, with his trial severed from Mr. Andrews' trial. During the trial, Mr. Fauntleroy moved to exclude Mr. Andrews' statement. The Court ruled that, although the substance of Mr. Andrews' statement would not be admissible, the jury would be allowed to hear "the fact that James Andrews did make a confession" because it was the "motivating factor for David Fauntleroy's confession." The State's theory was that Mr. Andrews committed the murder and Mr. Fauntleroy was guilty by accountability.

47.     During the trial, Defendant McWeeny testified that he arrested Mr. Andrews and interrogated him about the murder, and Mr. Andrews finally confessed and identified Mr. Fauntleroy, and police officers then went out and arrested Mr. Fauntleroy. Defendant McWeeny testified that Mr. Fauntleroy continued to deny any knowledge or involvement in the crime. It was only after McWeeny showed Mr. Fauntleroy the confession that Mr. Andrews had "voluntarily" signed, and only after McWeeny made Mr. Andrews stand in the doorway of Mr. Fauntleroy's interview room, that Mr. Fauntleroy "voluntarily" signed a confession and a consent to allow the search of his home. McWeeny also offered the false statement that he executed the search of Mr. Fauntleroy's home and found evidence that was identified as having belonged to the deceased. Finally, during the trial, Mr. Andrew's confession was shown to Mr. Fauntleroy's jury.

48.     There was no other evidence offered against Mr. Fauntleroy.

49.     After the trial, Mr. Fauntleroy was convicted of murder and armed robbery of Keith Lewis and sentenced to a term of natural life imprisonment on the murder and a term of sixty years on the armed robbery.

**The Circuit Court Grants Mr. Andrews' Post Conviction Petition.**

50.     On May 11, 2004, Mr. Andrews filed a Post Conviction Petition in the Circuit Court of Cook County. It argued that, by 2004, it was well established based upon evidence not available to Mr. Andrews in 1984 that Defendant Burge and detectives working under his supervision at Area Two engaged in systematic abuse and torture of arrested persons. It also argued that, if the Circuit Court had known these facts in 1984, when the suppression hearing was held, Mr. Andrews' testimony would have been credited and his motions to suppress would have been granted.

51.     On March 13, 2007, the Court (Sumner, J.) conducted a full evidentiary hearing on the issues raised in the Post-Conviction Petition. The Court subsequently found that Mr. Andrews "clearly prove[d] that [his] constitutional rights were violated," and, on October 15, 2007, vacated Mr. Andrews' convictions in Case Nos. 83-CR-4978 and 83-CR-4979 and ordered new trials in each of the cases. On February 1, 2008, the State *nolle prossed* the criminal cases against Mr. Andrews.

**The Circuit Court Grants Mr. Fauntleroy' Post Conviction Petition.**

52.     On August 27, 2008, based on the new evidence regarding Defendants Burge, Madigan and McWeeny, and based on the new evidence regarding Mr. Andrews, Mr. Fauntleroy filed a post conviction petition in the Circuit Court of Cook County. His petition argued that, if the Circuit Court had known these facts in 1984, when his

suppression hearing was held, Mr. Fauntleroy's motions to suppress would have been granted. His petition also argued that:

A. He was denied the Fifth Amendment right to due process and a fair trial because the police, under the command of Jon Burge at Area 2, forcibly coerced his codefendant, James Andrews, to give evidence which the State used to identify and arrest him, motivate him to confess, provide the only evidence against him, and give the jury the inference that he was implicated.

B. He was denied the Fifth Amendment right against self incrimination because the police forcibly coerced him to sign a confession and a consent to search his home, and no other evidence proved his guilt.

C. He was denied the Fifth Amendment right to have the State prove him guilty beyond a reasonable doubt because he was convicted by accountability for acts allegedly committed by James Andrews, but now there is no proof that Andrews or Fauntleroy are accountable for the offense.

D. He was denied the Sixth Amendment right to confront witnesses against him because the State published to the jury the contents of James Andrews' confession which incriminated Fauntleroy, but Andrews did not testify.

53. On January 8, 2009, the Circuit Court (Sheehan, J.) entered an order which granted Mr. Fauntleroy's post conviction petition, vacated his convictions for Murder and Armed Robbery in Case No in Case No. 83-CR-4979, and ordered a new trial.

54. On January 9, 2009, the Court (Sheehan, J.) entered an order which stated:

the People of the State of Illinois conceded that, after throughly investigating the facts in this case, the defendant is entitled to the post conviction relief stated in his petition. The People conceded, further, that in light of the facts in this case, and the law as it applies, defendant should prevail at an evidentiary hearing.

The order went on to grant a *nolle prosequi* of all charges against Mr. Fauntleroy and order his immediate release from prison.

**Count I**
**42 U.S.C. Section 1983**
**Fifth Amendment Violations**
**(Directed to Defendants Burge, Madigan, and McWeeny)**

55.     Paragraphs 1 through 54 of this Complaint are incorporated fully herein.

56.     As described more fully above, Defendants Burge, Madigan, and McWeeny, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Mr. Fauntleroy his right to counsel in violation of his Constitutional rights.

57.     This violation caused the confession on which his conviction was predicated, and this allegation therefore necessarily implies the invalidity of that conviction.

58.     As a result of this violation, Mr. Fauntleroy suffered injuries, including but not limited to emotional distress.

59.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally with willful indifference to Mr. Fauntleroy's constitutional rights.

60.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department as described more fully above.

61.     Independently, the misconduct described in this Count is also attributable to Defendant Burge in his supervisory capacity as described above, and the City of Chicago by virtue of the supervisory capacity of Defendant Burge, as described more fully in the preceding paragraphs.

**Count II**
**42 U.S.C. Section 1983**
**Failure to Intervene**
**(Directed to Defendants Burge, Madigan, and McWeeny)**

62.     Paragraphs 1 through 54 of this Complaint are incorporated fully herein.

63.     In the manner described above, during the coercive interrogation of Mr. Fauntleroy, some of the Defendants stood by without intervening to prevent the violence to which Mr. Fauntleroy was subjected.

64.     Defendants Burge, McWeeny, and Madigan, all acting independently, jointly, and in conspiracy, had knowledge of the coercive interrogation tactics and therefore had a reasonable opportunity to intervene.

65.     As a result of the various Defendants' failure to intervene to prevent the violation of Mr. Fauntleroy's constitutional rights, Mr. Fauntleroy suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

66.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally with willful indifference to Mr. Fauntleroy's constitutional rights.

67.     The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in preceding paragraphs.

**Count III**
**42 U.S.C. Section 1983**
**Torture, Abuse and Coerced Confessions**
**(Directed to Defendants Burge, Madigan, and McWeeny)**

68.     Paragraphs 1 through 54 of this Complaint are incorporated fully herein.

69.     Defendants Burge, McWeeny and Madigan, individually, jointly, and in conspiracy, abused and tortured Mr. Fauntleroy.

70.     As a result of Defendants' unjustified and excessive use of force, Mr. Fauntleroy suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

71.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

72.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in the manner described more fully above in that:

> a)     As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of constitutional violation at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;
>
> b)     As a matter of both policy and practice, the Department facilitates the very type of constitutional violation at issue here by failing to adequately punish and discipline prior instances of misconduct, including "repeater" offenders who exhibit patterns of abuse, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Mr. Fauntleroy;
>
> c)     Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Department violated the constitutional rights of citizens in a manner similar to that alleged by Mr. Fauntleroy on a frequent basis, all with the knowledge and acquiescence of supervisory and command personnel, yet the

Department makes findings of wrongdoing in a disproportionately small number of cases;

d) Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, the Department refuses to refer police officers for prosecution even when they commit violent crimes such that said officers are encouraged to believe they enjoy *de facto* immunity from criminal prosecution;

e) Mr. Fauntleroy's injuries were also caused by the policies and practices on the part of the City of Chicago of suppressing exculpatory *Brady* materials and improperly refusing to create exculpatory *Brady* materials;

f) Mr. Fauntleroy's injuries were also caused by the policies and practices of coercing confessions, failing to video tape interrogations, and fabrication of evidence, including false reports, all designed to encourage prosecutions and secure convictions regardless of actual guilt or innocence;

g) Municipal policy-makers and Department supervisors are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report and otherwise lie about misconduct committed by other officers, such as the misconduct at issue in this case; and

h) The City of Chicago failed to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby ratifying the unlawful practices and causing the types of injuries described herein.

73. The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct which occurred with Defendant Burge's knowledge and consent in his supervisory capacity, such that Burge personally knew about, facilitated, approved, and condoned it, or else affirmatively turned a blind eye thereto without taking any steps to stop it, and with Brzeczek's and Martin's consent in their supervisory capacities, such that they condoned it or else affirmatively turned a blind eye thereto without taking any steps to stop it.

74. In this way, Defendants are responsible for the complained-of injuries because they knowingly, willfully, or at least recklessly caused the alleged deprivation by their action or by their deliberately indifferent failure to act.

75. Independently, Defendant Burge is a supervisor who failed to stop misfeasor officers under his direction who tortured Mr. Fauntleroy despite his knowledge of the same.

**COUNT IV**
**42 U.S.C. Section 1983**
***Monell* Policy Claim**
**(Directed to the City of Chicago)**

76. Paragraphs 1 through 54 of this Complaint are incorporated fully herein.

77. The actions of Defendants Burge, Madigan, and McWeeny, as alleged in this Complaint, were done pursuant to one or more interrelated *de facto* policies, practices, or customs of Defendant City of Chicago, including its Police Department, its Office of Professional Standards, and/or its Superintendents, as well as its Mayor and his office and the Corporation Counsel and her Office.

78. At all times material to this Complaint, Defendant City of Chicago, including its various divisions, departments, and policymakers, had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

    A.    conducting physically, psychologically, or otherwise coercive and unconstitutional interrogations of witnesses, suspects, and arrestees in order to obtain confessions and wrongful convictions, including but not limited to, the use of torture techniques under the command and supervision of Defendant Burge and his subordinates in Area Two;

    B.    encouraging and facilitating the filing of false reports, giving of false statements and testimony about said interrogations and confessions, fabrication of evidence or testimony, suppression of evidence concerning said interrogations and coerced confessions, pursuing and obtaining wrongful prosecutions and imprisonments on the basis of

these coerced confessions, and otherwise covering up the nature and existence of the coercive and unconstitutional interrogation techniques employed by Area Two detectives;

C.    failing to adequately train, supervise and control its officers, particularly those officers who are accused of or known to use such unconstitutional interrogation or investigation tactics, such that its failure to do so manifests deliberate indifference;

D.    failing to adequately punish and discipline prior instances of misconduct, including "repeater" offenders who exhibit patterns of abuse, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Mr. Fauntleroy;

E.    suppressing exculpatory *Brady* materials and improperly refusing to create exculpatory *Brady* materials;

F.    coercing confessions, failing to video tape interrogations, and fabrication of evidence, including false reports, all designed to encourage prosecutions and secure convictions regardless of actual guilt or innocence;

G.    enacting, enforcing, encouraging, and facilitating a "code of silence" in the Chicago Police Department, by which officers fail to report and otherwise lie about misconduct committed by other officers, such as the misconduct at issue in this case; and

H.    consistently failing to timely act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby ratifying the unlawful practices and causing the types of injuries described herein.

79.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Department violated the constitutional rights of citizens in a manner similar to that alleged by Mr. Fauntleroy on a frequent basis, all with the knowledge and acquiescence of supervisory and command personnel, yet the Department makes findings of wrongdoing in a disproportionately small number of cases.

80.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, the City refuses to refer police officers for prosecution even when they commit violent crimes such that said officers are encouraged to believe they enjoy *de facto* immunity from criminal prosecution.

81.    These interrelated policies, practices, and customs, both individually and together, were maintained and implemented with deliberate indifference and they encouraged the conduct otherwise complained of in this Complaint.

82.    These interrelated policies, practices, and customs, both individually and together, were a direct and proximate cause of the unconstitutional acts committed by the named Defendants and the injuries suffered by the Plaintiff.

**WHEREFORE,** Plaintiff David Fauntleroy respectfully requests that this Court enter judgment in his favor and against Defendants Jon Burge, Raymond Madigan, Daniel McWeeny, and the City of Chicago, Illinois, awarding compensatory damages, costs, and attorneys' fees, and punitive damages, against each of the Defendants, and grant such other and further relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff demands a trial by a jury pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,
**DAVID FAUNTLEROY**

**Dated:** January 7, 2011          **By**:     /s/Douglas B. Harper
Douglas B. Harper
Attorney ID No. 6199697
The Law Office of Douglas B. Harper
70 West Madison Street, Suite 1400
Chicago, Illinois 60602
Telephone: (312) 214-2454